IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WILLIAM NAPUAOKALANI KEPA,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>Defendant. | Case No. 24-cv-00016-DKW-RT<br><br>**ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff William Napuaokalani Kepa, proceeding without counsel, appeals the decision of the Commissioner of Social Security denying Kepa's applications for disability insurance benefits and supplemental security income. Liberally construing Kepa's two-page briefing on this matter, he argues that the Commissioner did not adequately develop the administrative record by failing to obtain records from the "State of Hawaii Welfare Office", which, according to Kepa, would have shown, "without a doubt", that he is unable to work. The Commissioner opposes Kepa's appeal, arguing that the Administrative Law Judge (ALJ) obtained additional medical records, that Kepa told the ALJ that his records had been submitted, and that Kepa fails to explain how any further information would have changed the ALJ's decision.

Upon review of the administrative record and the instant briefing, the Court agrees with the Commissioner in all material respects. Specifically, the record reflects that, at the administrative hearing, Kepa told the ALJ that, apart from information from a Dr. Michael Jaffe, he had "submitted everything"; after the hearing, the ALJ obtained additional medical information from Dr. Jaffe; and, at no point during the hearing did Kepa inform the ALJ of missing information from the State of Hawai'i Welfare Office or anything close to it. Moreover, as the Commissioner observes, although Kepa baldly asserts that information from the Welfare Office would resolve this case in his favor, he fails to explain how or why it would disturb the ALJ's decision in this case. There is, thus, no reason on this record for the Court to question the decision denying Kepa's applications. As a result, for the reasons set forth more fully below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

### I. Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520; 20 C.F.R § 416.920. First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b). Second,

the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. *Id*. §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c)  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work. *Id*. § 404.1520(e); § 416.920(e). The evaluation then proceeds to a fourth step, which requires the claimant to show that his impairment, in light of the RFC, prevents him from performing work he performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f). If the claimant is able to perform his previous work, he is not disabled. *Id*. § 404.1520(f); § 416.920(f). If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step. *Id*. §§ 404.1520(a)(4)(v), (g); §§ 416.920(a)(4)(v), (g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); § 416.960(c); *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at Step Five, the burden moves to the Commissioner).  If the Commissioner fails to meet this burden, the claimant is deemed disabled.  20 C.F.R. § 404.1520(g)(1); § 416.920(g)(1).

## II.     The ALJ's Decision

On December 7, 2022, the ALJ issued a decision finding Kepa not disabled for purposes of the SSA from the alleged onset date of January 13, 2020 through the date of the decision.  Administrative Record (AR) at 315.  At Step One of the evaluation process, the ALJ determined that Kepa had not engaged in substantial gainful activity since the alleged onset date.  *Id*. at 317.  At Step Two, the ALJ determined that Kepa had the following severe impairments: degenerative disc disease of the lumbar spine with herniation, stenosis, annular tear, neurogenic claudication, radiculopathy, status post laminectomy, and post-laminectomy syndrome.  *Id*.  At Step Three, the ALJ determined that Kepa did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations.  *Id*. at 318.

Before reaching Step Four, the ALJ determined that Kepa had the RFC to perform "sedentary work" except as follows: "He can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds.  He can occasionally

4

balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to vibration. He is unable to work around hazardous machinery or unprotected heights." *Id*. At Step Four, the ALJ determined that Kepa was not capable of performing past relevant work. *Id*. at 321-322. At Step Five, in light of Kepa's RFC, age, education, and work experience, the ALJ determined that he could perform jobs existing in significant numbers in the national economy. *Id*. at 322-323. Specifically, a vocational expert testified that Kepa would be able to perform the jobs of document preparer, circuit board assembler, and fundraiser. *Id*. at 323. As a result, the ALJ determined that Kepa was not disabled from January 13, 2020 through the date of the decision. *Id*.

On January 31, 2023, the Appeals Council acknowledged receipt of Kepa's request for review of the ALJ's decision. *Id*. at 309. In doing so, the Appeals Council advised Kepa that he could send in additional evidence related to his case. *Id*. Thereafter, additional medical records—specifically, records from Adventist Health Castle and Hawaii Brain & Spine—were sent to the Appeals Council. *Id*. at 6-308. On December 7, 2023, the Appeals Council denied Kepa's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. *Id*. at 1-3. In doing so, the Appeals Council stated that additional

medical records had been submitted, and the Appeals Council did not find that the same would change the ALJ's decision. *Id*. at 2.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id*. (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

## DISCUSSION

Kepa proceeds without counsel in this action. Therefore, the Court liberally construes his filings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v.*

*Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Here, having liberally construed Kepa's briefing and the administrative record, for the reasons set forth below, there is no basis to disturb the ALJ's decision.

Kepa's two-page brief concerns a single purported error in the ALJ's decision: the ALJ's alleged failure to obtain information from the State of Hawaiʻi Welfare Office. The administrative record reflects something different, however. Specifically, at the administrative hearing, the ALJ asked Kepa to review the medical evidence that had been received and indicate whether there was any additional evidence that he would like to submit. AR at 336. Kepa responded that he had "submitted everything[,]" but indicated that there could be additional evidence from his doctor, Dr. Jaffe. *Id*. at 336-337. The ALJ then stated that updated records would be requested from Dr. Jaffe. *Id*. at 337. The ALJ further told Kepa that, if there was "anybody else" with additional evidence, Kepa should let the ALJ's office know. *Id*. at 337-338. Kepa then agreed that, if updated records were obtained from Dr. Jaffe, there would be nothing more in terms of additional evidence. *Id*. at 338. Further, the administrative record reflects that, after this hearing, the ALJ obtained additional evidence from Dr. Jaffe. *Id*. at 940-1065. Further still, based on the record, there is no evidence that Kepa ever informed the ALJ of the existence of any information with the State of Hawaiʻi

7

Welfare Office. Instead, when Kepa was asked to identify any additional evidence, he stated, apart from Dr. Jaffe, there was no such information. The ALJ, therefore, could not have erred in failing to obtain information that the ALJ was never told even existed. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (explaining that a "duty to develop the record" is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Here, as far as the ALJ was concerned, other than Dr. Jaffe's information, there was no further evidence to obtain or review, let alone ambiguous or inadequate evidence, and Kepa makes no attempt to argue to the contrary.

Further, even if the ALJ had obtained additional evidence from the Welfare Office, other than claiming that a physician at the State of Hawaiʻi Welfare Office had "deemed me disabled", Kepa provides no explanation for how this evidence undermines the ALJ's decision. First, assuming that the Welfare Office had deemed Kepa disabled,[1] that determination alone does not undermine the ALJ's decision in *this* proceeding because the question of Kepa's disability *for purposes of the SSA* is a matter reserved to the Commissioner. *Thornsberry v. Colvin*, 552

---

[1] The Court notes that the administrative record also does not reflect that Kepa informed the ALJ of the State of Hawaiʻi's alleged disability determination.

8

F. App'x 691, 691 (9th Cir. Jan. 15, 2014) ) ("a doctor's opinion that a claimant is disabled is not itself a medical opinion but an issue reserved exclusively for the Commissioner."). Second, Kepa provides no explanation of how the determination of the Welfare Office, if any, results in a lack of substantial evidence for the ALJ's decision of non-disability. For example, among other things, the Welfare Office's purported determination does not make any less substantial the ALJ's review of Kepa's treatment notes and subsequent conclusion that they failed to show greater limitations than those reflected in the RFC. AR at 318-321.

Because Kepa has failed to show any legal error in the ALJ's failure to obtain unknown and unidentified information from the State of Hawaiʻi Welfare Office or the lack of substantial evidence for the ALJ's non-disability determination, the ALJ's decision must be AFFIRMED. *See Ryan*, 528 F.3d at 1198.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision, denying Kepa's applications for disability insurance benefits and supplemental security income, is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of the Commissioner and then close this case.

IT IS SO ORDERED.

DATED: July 9, 2024 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge